**Opinion filed September 22, 2022**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-21-00119-CR & 11-21-00120-CR

_____

### BRANDON LEO WALKER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause Nos. CR51700 & CR51701**

## M E M O R A N D U M   O P I N I O N

Appellant, Brandon Leo Walker, was charged in separate indictments with continuous sexual abuse of T.W., a child under fourteen years of age, and aggravated sexual assault of Z.K., a child under fourteen years of age. The trial court granted the State's motion to consolidate the two indictments for trial. *See* TEX. PENAL CODE ANN. §§ 3.01, 3.02 (West 2021). The jury found Appellant not guilty of continuous sexual abuse of T.W. but guilty of the lesser included offense of

aggravated sexual assault, a first-degree felony. The jury also found Appellant guilty of aggravated sexual assault of Z.K. For each conviction, the jury assessed punishment at confinement for a term of seventy-five years in the Institutional Division of the Texas Department of Criminal Justice. The trial court granted the State's motion to cumulate and ordered that Appellant's sentences shall run consecutively. *See* TEX. PENAL CODE ANN. § 3.03 (West Supp. 2021). This appeal followed.

In his sole issue, Appellant contends that the trial court failed to properly instruct the jury on the law of extraneous offenses, after a timely request from trial counsel, at the time the State introduced evidence of additional acts by Appellant using his sexual organ in the abuse of T.W. Appellant asserts that the trial court's error "tainted both of [the] cases" that were consolidated for trial, and therefore requests that this court reverse and remand both cases for a new trial. We affirm.

*Background*

T.W. is Appellant's biological daughter. On March 23, 2018, T.W., who was then nine years old, went to the school counselor's office at her elementary school upset and crying, telling the counselor that T.W.'s biological father had "hurt my dog when he came in my bed last night." When the counselor asked why Appellant was in her bed, T.W. replied, "because he touches me in a confusing way," and she indicated that he touched her in such a way on her breasts and in her pelvic area.

Following the outcry, T.W. was taken to the Children's Advocacy Center (CAC) where she was interviewed by forensic interviewer Katherine Shores, the State's outcry witness. At the CAC interview, T.W. told Shores that Appellant had come into her room the previous night, "pulled her dog off her bed by the collar," and touched her private part with his finger, moving his finger up and down "where she pees from, and that it hurt." T.W. told Shores that Appellant took photographs

2

of her "private part" on his phone during the incident. T.W. told Shores that Appellant had touched her "in her private part" on three occasions—on the previous night, on the night of her birthday, and once on a date prior to her birthday. Midland Police Department Detective Rosie Rodriguez obtained an arrest warrant for Appellant the same day T.W. outcried.

Prior to trial, T.W. made additional outcries against Appellant during counseling sessions with licensed professional counselor Kristin Dennis. Specifically, T.W. stated that Appellant put his penis in her mouth and in her vagina during the incidents of abuse. On March 10, the State provided the defense with a Notice of Exculpatory or Impeaching Evidence, stating that T.W. made these additional outcries during the course of her therapy sessions and during her interviews with the State. Trial began on March 16.

At the beginning of T.W.'s trial testimony, the State asked T.W. what she talked about at the CAC. T.W. responded that she talked about "how [she] got raped by [her] father and that - - and told them that he put his penis in [her] vagina." The defense objected and requested that the trial court strike T.W.'s answer and instruct the jury to disregard the testimony until the parties could conduct a hearing outside of the jury's presence. The trial court granted trial counsel's motion to strike "as it relates to the last answer, which was a penis in vagina," instructed the jury to disregard T.W.'s answer to the State's question, and allowed T.W. to continue her testimony following an admonishment from the State to avoid testifying about that specific allegation.

T.W. then began describing Appellant's abuse for the jury. T.W. testified that "it happened" three times and that she told someone about the abuse the day after the last time it had occurred. T.W. testified that, on March 22, 2018, the night of the last incident, her mother was at the gym; Appellant was "hanging out" with T.W.'s

3

stepfather at her home; and the kids were all in their beds. T.W. testified that, after she went to sleep, Appellant walked in and pulled the dog off her bed. T.W. testified that Appellant took the covers off her legs and put them over her face, making it difficult for T.W. to breathe, and then pulled down her shorts.

During T.W.'s testimony, the parties approached the bench at the State's request. Seeing that T.W. was having difficulty knowing how to proceed with her testimony following the State's admonishments regarding Appellant's acts with his sexual organ, the State requested that the parties have the hearing on such prospective testimony outside the presence of the jury. The trial court agreed and recessed the jury for purposes of the hearing. Outside the presence of the jury, T.W. testified that, during the incidents for which Appellant was indicted, Appellant "stuck his penis in [her] vagina and he stuck his penis in [her] mouth"—in addition to putting his fingers in her vagina.

At the conclusion of the hearing, Appellant objected to the admission of evidence regarding Appellant's acts with his sexual organ against T.W., citing inconsistencies and insufficient detail in T.W.'s testimony and insufficient notice by the State pursuant to Article 38.37 of the Texas Code of Criminal Procedure and Rule 404(b) of the Texas Rules of Evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2021) (permitting evidence of extraneous offense committed by the defendant against a child victim, but requiring the State to give at least thirty days' notice of its intent to introduce such evidence at trial); TEX. R. EVID. 404(b). In response, the State argued that the acts did not constitute extraneous offenses because such acts "happened at the same time as the other events" and were therefore "additional information on the same crime."

The trial court overruled Appellant's objections, found the State's notice to be untimely under Article 38.37 but reasonable for purposes of Rule 404(b), and

4

admitted the testimony regarding (1) Appellant's sexual organ to T.W.'s sexual organ and (2) Appellant's placement of his sexual organ to T.W.'s mouth. The trial court indicated that the evidence was admitted pursuant to Rule 404(b)(2). *See* TEX. R. EVID. 404(b)(2). Specifically, the trial court found that these allegations were subsumed within a "single sequence of events" and that the acts proved "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *See id.* The trial court explicitly found that all of the Rule 404(b)(2) exceptions to otherwise inadmissible character evidence applied to this evidence. *See id.* Appellant objected to the trial court's ruling and requested that the trial court provide the jury with a limiting instruction contemporaneous with the admission of the testimony. The trial court denied trial counsel's request for such an instruction and, over Appellant's further objections, indicated that the instruction would be more appropriate in the jury charge.

With the jury reseated, T.W. then testified that, after Appellant removed the dog from her bed, Appellant started taking photographs of her vagina and inserted his fingers into her vagina. T.W. testified that Appellant put his penis in her vagina and in her mouth on the same days that he put his fingers in her vagina. When asked why she did not tell Shores about Appellant's acts with his sexual organ, T.W. testified that she "was too uncomfortable to say [it] at the time." When asked why she outcried only after the third time the acts occurred, T.W. testified that she "was over it" and "didn't want it to happen again" and "wanted to tell someone before it could happen again to anyone else."

T.W.'s stepfather confirmed that on the night of the third incident, March 22, 2018, Appellant was at the stepfather's house late in the evening to "hang out" and testified that they "[h]ad a couple drinks. And it was just a regular - - regular thing we did every now and then." T.W.'s stepfather testified that he went to the bathroom

then came out but could not find Appellant. T.W.'s stepfather testified that he then messaged Appellant, "Hey, man, where you at?" Appellant responded that he was "telling the girls goodnight," and Appellant returned to the front of the house shortly thereafter.

Z.K., the daughter of Appellant's then-girlfriend, testified that early the next morning, on March 23, 2018, Appellant came into her room and lay behind her while she was on her side before she woke up for school. Z.K. testified that Appellant pulled her nightgown up and her underwear down and then put his hands around her waist and "stuck something in [her] butt." Z.K. testified that she pretended to be asleep during the abuse and that Appellant pulled her underwear up after he stopped. Z.K. was ten years old at the time.

Z.K.'s mother confirmed that Appellant was in Z.K.'s bed with Z.K. when she woke her up for school that morning, and Z.K.'s mother testified that she found this unusual. Z.K.'s mother testified that she did not know what time Appellant returned home that morning. Z.K.'s mother further testified that she did not know that Appellant had returned to her home until she went into Z.K.'s room to wake her up for school.

Other child victims testified during the guilt/innocence phase of trial as to Appellant's acts against them. R.W. testified that when she was eight or nine, Appellant touched her vagina when she was at a sleepover in T.W.'s home. R.W. testified that she was on a mattress on the floor of T.W.'s room during the sleepover. R.W. testified that, after the girls went to bed, Appellant came into the room, got on his knees, and started touching her on her vagina over her underwear. R.W. testified that she acted like she was asleep but then kicked Appellant when he touched her vagina. R.W. testified that Appellant then got up and left the room.

6

S.W., Appellant's other biological daughter, testified that when she was four or five years old, Appellant told her to put on the lacy underwear of his girlfriend and "bounce her bottom up and down" while he took photographs with his phone. The State introduced, and the court admitted, photographs from Appellant's phone that depicted child pornography relating to T.W. and S.W.

*Analysis*

In his sole issue in each appeal, Appellant argues that the trial court's failure to provide, upon trial counsel's request, a contemporaneous limiting instruction when T.W. testified about Appellant's acts with his sexual organ constituted reversible error.

A. *Limiting Instruction*

"The language of Rule 105(a) does not address the temporal aspect of when limiting instructions should be given, but, rather, sets out the circumstances under which an instruction must be given." *Rankin v. State*, 974 S.W.2d 707, 712 (Tex. Crim. App. 1996) (citing TEX. R. EVID. 105(a)). The *Rankin* court stated:

> [L]imiting instructions actually curb the improper use of evidence[,] and . . . the rule should act in a way that not only "restrict[s] the evidence to its proper scope", but does so as effectively as possible. [TEX. R. EVID.] 105(a). Working under these notions, logic demands that the instruction be given at the first opportunity. If limiting instructions impede the improper use of evidence, then an instruction given when the evidence is admitted limits that evidence to its proper scope immediately. An instruction given for the first time during the jury charge necessarily leaves a window of time in which the jury can contemplate the evidence in an inappropriate manner.

*Id.* Thus, pursuant to *Rankin*, the trial court should have contemporaneously provided the jury with a limiting instruction that restricted its consideration of the evidence to the applicable exceptions in Rule 404(b) following Appellant's timely request. *See id.* at 713; *see also Hammock v. State*, 46 S.W.3d 889, 893–95 (Tex.

7

Crim. App. 2001) (confirming that, if timely requested, limiting instruction should be given first when the evidence is admitted and then again in the jury charge). We hold that the trial court erred in failing to do so.

The State admits on appeal that the trial court erred in failing to give a contemporaneous instruction in this case. The State having conceded, and this court having held, that the trial court erred in failing to provide a contemporaneous limiting instruction, we must next examine the degree to which any such error may have been harmful.

B. *Harmless Error Standard*

The parties disagree regarding the level of harm required when a trial court fails to provide a contemporaneous limiting instruction upon trial counsel's timely request. Appellant submits that he must only establish that "some harm" resulted from the court's failure to give a contemporaneous limiting instruction, citing *Heigelmann v. State*, 362 S.W.3d 763, 776 (Tex. App.—Texarkana 2012, pet. ref'd). Conversely, the State asserts that Appellant's proposed "some harm" analysis applies to jury charge error rather than error from a trial court's failure to provide a contemporaneous limiting instruction, citing *Gonzalez v. State*, 541 S.W.3d 306, 313 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The State submits that the non-constitutional error standard in Rule 44.2(b) of the Texas Rules of Appellate Procedure applies. *See* TEX. R. APP. P. 44.2(b).

The Court of Criminal Appeals has been clear in its direction. A harmless error analysis applies to a trial court's failure to give a simultaneous limiting instruction. *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996); *cf. Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994) (discussing "some harm" analysis as applicable to jury charge error); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim App. 1984) (same).

8

### C. *Harmless Error Analysis—Effect on Appellant's Substantial Rights*

The harm standard in Rule 44.2(b) applies to the trial court's non-constitutional error. TEX. R. APP. P. 44.2(b). Because failure to give a limiting instruction under Rule 105 constitutes non-constitutional error, we disregard such an error if it "does not affect substantial rights." *Id.*; *see Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). An error does not affect a defendant's substantial rights if, after examining the record as a whole, the appellate court has fair assurance that "the error did not influence the jury, or had but a slight effect." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). To make this determination, we consider: "(1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error." *Id.* We will address each of these four considerations in order.

#### (1) *The character of the error considered in connection with the other evidence*

Initially, the trial court struck T.W.'s testimony regarding Appellant's acts with his sexual organ. However, following a hearing before the trial court, T.W. was allowed to testify as to such acts. But the jury also heard evidence from the sexual assault nurse examiner (SANE) that T.W. showed bilateral redness on her genitals, which could have been caused by "a number of things," and that there appeared to be no acute injury during her examination. The SANE nurse clarified that not finding any physical injury is a "normal" circumstance for this type of exam. The SANE nurse also answered in the affirmative when asked, "[I]f anything smaller than a regular penis were inserted, . . . would [it] even be less likely to show injury?" Appellant's trial counsel cross-examined T.W. at length regarding her delayed outcry and inconsistent statements regarding Appellant's acts with his sexual organ.

Accordingly, the jury was free to compare and weigh the credibility of T.W.'s testimony as to acts by Appellant using his sexual organ with the other evidence offered during the trial. *See Gonzalez*, 544 S.W.3d at 374–75.

Importantly, the trial court included an extraneous offense instruction specific to the evidence in both the guilt/innocence phase and the punishment phase jury charges. In both causes, the trial court's charge to the jury in the guilt/innocence phase of trial instructed the jury as follows:

> The Defendant is on trial solely on the charge contained in the indictment[.] You are instructed that if there is testimony or evidence before you in this case regarding the Defendant committing other sexual acts with [T.W.][,] to wit[:] putting his penis in her mouth and vagina[,] you cannot consider such evidence[,] if any[,] for any purpose unless you find and believe beyond a reasonable doubt that the Defendant did commit those acts[,] and even then you may only consider the same for the purpose of determining intent or motive or opportunity or knowledge or identity or common plan or scheme or lack of accident[,] if it does[,] and for no other purpose[.]

The inclusion of the extraneous offense paragraph specific to the evidence at issue in the trial court's jury charges weighs against a finding that harm occurred. *See Gonzalez*, 541 S.W.3d at 314–15.

> (2) *Considering the nature of the evidence that supports the verdict*

In this case, the jury was provided with two lesser included offenses in the jury charge for the offenses against T.W. As stated above, the jury found Appellant not guilty of continuous sexual abuse of T.W. but guilty of the lesser included offense of aggravated sexual assault. The lesser included aggravated sexual assault in the charge alleged that Appellant intentionally and knowingly caused the penetration of T.W.'s sexual organ by his finger. The jury heard evidence from T.W. regarding Appellant's acts with his finger in addition to the evidence at issue. It is clear from the jury's verdict that it understood the parameters of its consideration of

10

the evidence regarding Appellant's acts with his sexual organ. The nature of the evidence that supports the jury's verdict with respect to T.W. weighs against a finding of harm.

(3) *Considering the existence and degree of additional evidence indicating guilt*

As noted by the State, the other evidence against Appellant was substantial. As previously discussed in detail above, the jury heard testimony from several children regarding Appellant's abuse against them. The jury heard evidence from the child victims that Appellant had a similar method when abusing the girls—preying on children under ten years old; waiting until the child fell asleep; and exploiting an opportunity created when children were away from other adults. The jury heard testimony regarding Appellant's repeated touching of these child victims. The jury also heard testimony and received evidence showing that Appellant took pornographic photographs of T.W. and S.W. during his abuse. The existence and degree of additional evidence indicating Appellant's guilt weighs heavily against a finding that harm occurred.

(4) *Considering whether the State emphasized the error*

Here, the State mentioned but did not emphasize the evidence after such evidence was admitted. T.W. testified briefly about Appellant's acts with his sexual organ, and her responses were restricted to a few, brief direct questions on such evidence. When the State called Kristin Dennis, T.W.'s counselor, it did not emphasize the substance of T.W.'s "additional outcries" but instead focused on developing for the jury how children who experience trauma process what occurred to them and, if comfortable with an individual, communicate such trauma to others. During his cross-examination of T.W., it was instead Appellant's trial counsel that focused his questions heavily on Appellant's use of his sexual organ (specifically mentioning the act 17 times in 28 transcribed pages of cross-examination) while

11

seeking to highlight inconsistencies in T.W.'s statements to Shores as compared to her testimony on direct three days prior. In response, the State addressed T.W.'s delayed outcry. In so doing, the State questioned T.W. briefly as to the timing of her outcry regarding Appellant's acts with his sexual organ to allow T.W. to explain why she did not tell Shores about such acts at her CAC interview but instead chose to tell her counselor at a later date. During its closing statements, the State generally stated that Appellant "started with his fingers with [T.W.] and then he escalated" when talking about Appellant's method of abuse with young girls. Further, when it mentioned the complained-of acts specifically in closing, the State focused instead on the indicted acts—Appellant's acts with his fingers:

> It's the [verdict form] for continuous sexual abuse of a child. Because that's what he did and that's what we've proved. That's what [T.W.] told you.
>
> Yes, she was unsure of exactly how many times he put his penis in her mouth, his penis in her vagina, but every time, all three times, he put his fingers in her vagina. More than twice over 30 days. And that's continuous sexual assault of a child.

This remark constituted less than a minute of the State's 21-minute closing argument.

Considering the instruction in both charges, and after carefully examining the record as a whole, we have fair assurance that "the error did not influence the jury, or had but a slight effect." *Gonzalez*, 544 S.W.3d at 373. We hold that the trial court's error in failing to provide a contemporaneous limiting instruction did not affect Appellant's substantial rights. Accordingly, we overrule Appellant's sole issue in each appeal.

12

*This Court's Ruling*

We affirm the judgments of the trial court.

W. BRUCE WILLIAMS

JUSTICE

September 22, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.